**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**OCALA DIVISION**

ROBERT F. DUGAN,

    Plaintiff,

v.                                Case No. 5:13-cv-235-Oc-32PRL

FNU SCOTT, et al.,

    Defendants.

## **ORDER**

### *I. Status*

Plaintiff, a federal inmate, initiated this case by filing a pro se Civil Rights Complaint (Doc. 1). On October 6, 2016, this Court entered an Order granting in part and denying in part Defendants' Motion for Summary Judgment (Doc. 78). As explained in the Court's summary judgment Order, the only claims now remaining are Plaintiff's First Amendment claims against Defendants Vargas, Dole, Scott, Figueroa, Lopes, and Kajander:

> Plaintiff alleges that the remaining Defendants subjected him to retaliation for exercising his First Amendment right to Free Speech. Specifically, Plaintiff claims that he engaged in the administrative remedy process, assisted other inmates with their own grievances and pursued his lawsuit in 5:10-cv-367. In response, Plaintiff alleges that the remaining Defendants strip searched him, transferred him to another prison, confiscated his property, delayed his access to his medical records and placed him in the SHU.[1] (Doc. 1).

---

[1] "Special Housing Units (SHUs) are housing units in Bureau institutions where inmates are securely separated from the general inmate population, and may be

> Defendants argue that there is "no Bivens[2] liability for violation of the First Amendment." (Doc. 73). **While the Supreme Court has not specifically extended a Bivens cause of action based on the First Amendment, the Court is not persuaded that the Eleventh Circuit does not recognize such a claim.** See Hollins v. Samuals, 2013 U.S. App. LEXIS 20007 (11th Cir. 2013) (citing Alexander v. Hawk, 159 F.3d 1321 (11th Cir. 1998) (stating that "[w]e've considered a Bivens claim for an alleged First Amendment violation.["]); See also Walden v. CDC & Prevention, 669 F.3d 1277 (11th Cir. 2012) (disposing of the case on other grounds, but assuming without deciding that the plaintiff could seek a Bivens remedy for violations of the First Amendment Free Exercise Clause.); Burns v. Warden, USP Beaumont, 2012 U.S. App. LEXIS 13209 (11th Cir. 2012) (finding that there was a sufficient factual basis for a prisoner's First Amendment retaliation claim brought pursuant to Bivens.). As such, the Court will consider this ground for relief.

Doc. 78 at 21-22 (emphasis added). The Court went on to find that genuine issues remain as to whether those six Defendants violated Plaintiff's clearly established First Amendment rights, and allowed this case to proceed on Plaintiff's First Amendment claims for nominal damages. See id. at 23-28.

Before the Court is Defendants' Motion for Reconsideration of the Court's Order Based upon an Intervening Change in Controlling Law (Doc. 104). Defendants assert that after entry of this Court's summary judgment Order, the United States Supreme Court decided Ziglar v. Abbasi, 137 S. Ct. 1843 (2017), which is an intervening change

---

housed either alone or with other inmates. Special housing units help ensure the safety, security, and orderly operation of correctional facilities, and protect the public, by providing alternative housing assignments for inmates removed from the general population." 28 C.F.R. § 541.21.

[2] Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics, 403 U.S. 388 (1971).

in controlling law. According to Defendants, Abbasi provides a new multi-part test that courts must undertake to determine whether a Bivens remedy is available. They argue that applying the new test to this case dictates that the Court reconsider its prior Order and grant summary judgment in Defendants' favor on Plaintiff's First Amendment retaliation claims.

Plaintiff, through counsel,[3] filed a Response in opposition (Doc. 121). Plaintiff argues that reconsideration is inappropriate because Abbasi merely "collects and clarifies 50 years of controlling law; it does not change Bivens at all." Even assuming it is an intervening change in controlling law, Plaintiff argues that application of the Abbasi test warrants denial of Defendants' request for reconsideration.

## II.   *Legal Standard*

Under Federal Rule of Civil Procedure 54(b), an order "that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." Fed. R. Civ. P. 54(b).[4] The decision to grant a motion for reconsideration

---

[3] Counsel was appointed after entry of the Court's summary judgment Order. See Orders (Docs. 107, 111); Notices of Appearance (Doc. 110, 112).

[4] Defendants cite to Rule 54(b) as the basis for seeking reconsideration. See Doc. 104 at 1-2. Regardless of the procedural Rule used, the same standard applies. See Maldonado v. Snead, 168 F. App'x 373, 386-87 (11th Cir. 2006) ("Although the district court reviewed [the] motion under Rule 54(b) as a motion for reconsideration of a non-final order rather than under Rule 60(b) as a motion for relief from judgment, '[w]e see no reason to apply a different standard when the party seeks reconsideration of a non-final order' than when the party seeks reconsideration of a final judgment." (quoting Region 8 Forest Serv., 993 F.2d at 806)).

is within the sound discretion of the trial court. Region 8 Forest Serv. Timber Purchasers Council v. Alcock, 993 F.2d 800, 805-06 (11th Cir. 1993). Courts have delineated three major grounds that may justify reconsideration: "(1) an intervening change in controlling law; (2) the availability of new evidence; [and] (3) the need to correct clear error or prevent manifest injustice." Sussman v. Salem, Saxon & Nielsen, P.A., 153 F.R.D. 689, 694 (M.D. Fla. 1994) (citation omitted).

### III. *History of Bivens*

Since 1871, an injured person has been entitled to sue a state official for monetary damages if that official violates his federal constitutional rights. See Abbasi, 137 S. Ct. at 1854 (citing 42 U.S.C. § 1983). However, "Congress did not create an analogous statute for federal officials. Indeed, in the 100 years leading up to Bivens, Congress did not provide a specific damages remedy for plaintiffs whose constitutional rights were violated by agents of the Federal Government." Id.

In 1971, the Supreme Court decided Bivens, in which it recognized an implied cause of action for damages against federal officials who violate an individual's Fourth Amendment rights against unreasonable search and seizures. Since then, the Court has extended Bivens on only two occasions.

> In Davis v. Passman, 442 U.S. 228 (1979), an administrative assistant sued a Congressman for firing her because she was a woman. The Court held that the Fifth Amendment Due Process Clause gave her a damages remedy for gender discrimination. Id. at 248-49. And in Carlson v. Green, 446 U.S. 14 (1980), a prisoner's estate sued federal jailers for failing to treat the prisoner's asthma. The Court held that the Eighth Amendment Cruel and Unusual Punishments Clause gave him a damages remedy for failure to provide adequate medical treatment.

4

> See id. at 19. These three cases—Bivens, Davis, and Carlson—represent the only instances in which the Court has approved of an implied damages remedy under the Constitution itself.

Abbasi, 137 S. Ct. at 1854-55 (internal citations modified); see Johnson v. Burden, No. 18-11937, 2019 WL 2949425, at *2 (11th Cir. July 9, 2019) ("Bivens has been applied to a Fourth Amendment case involving a search and seizure, a Fifth Amendment gender discrimination case, and an Eighth Amendment case involving cruel and unusual punishment. Only in these three contexts did the Supreme Court approve an implied damages remedy under the Constitution itself." (citations omitted)).

In 2017, the Supreme Court decided Abbasi. The Court recognized that it "has made clear that expanding the Bivens remedy is now a 'disfavored' judicial activity." Abbasi, 137 S. Ct. at 1857 (quoting Ashcroft v. Iqbal, 556 U.S. 662, 675 (2009)). To determine whether a Bivens remedy exists, a court first asks whether the case before it presents a new Bivens context, which requires a court to consider whether "the case is different in a meaningful way from previous Bivens cases decided by [the Supreme] Court." Id. at 1859.

> A case might differ in a meaningful way because of the rank of the officers involved; the constitutional right at issue; the generality or specificity of the official action; the extent of judicial guidance as to how an officer should respond to the problem or emergency to be confronted; the statutory or other legal mandate under which the officer was operating; the risk of disruptive intrusion by the Judiciary into the functioning of other branches; or the presence of potential special factors that previous Bivens cases did not consider.

Id. at 1860.

If the case presents a new context, "a Bivens remedy will not be available if there are 'special factors counselling hesitation in the absence of affirmative action by Congress.'" Id. at 1857 (quoting Carlson, 446 U.S. at 18). The Court has not defined "special factors counselling hesitation," but any such "inquiry must concentrate on whether the Judiciary is well suited, absent congressional action or instruction, to consider and weigh the costs and benefits of allowing a damages action to proceed." Id. at 1857-58. Thus, a "special factor" is one that "cause[s] a court to hesitate before answering that question in the affirmative." Id. at 1858.

"There may be many such factors, but two are particularly weighty: the existence of an alternative remedial structure and separation-of-powers principles." Bistrian v. Levi, 912 F.3d 79, 90 (3d Cir. 2018). "[I]f there is an alternative remedial structure present in a certain case, that alone may limit the power of the Judiciary to infer a new Bivens cause of action." Abbasi, 137 S. Ct. at 1858. Generally, "if there are sound reasons to think Congress might doubt the efficacy or necessity of a damages remedy as part of the system for enforcing the law and correcting a wrong, the courts must refrain from creating the remedy in order to respect the role of Congress in determining the nature and extent of federal-court jurisdiction under Article III." Id. Courts should consider "the burdens on Government employees who are sued personally, as well as the projected costs and consequences to the Government itself." Id. Courts should also consider whether Congress "has designed its regulatory authority in a guarded way, making it less likely that Congress would want the Judiciary to interfere." Id.; see Bistrian, 912 F.3d at 90 (recognizing that Abbasi

6

identified the following as special factors: "the potential cost to the government of recognizing a private cause of action, both financially and administratively; whether the judiciary is well suited to weigh those costs; the necessity to deter future violations; whether Congress has already acted in that arena, suggesting it does not want the Judiciary to interfere; whether a claim addresses individual conduct or a broader policy question; whether litigation would intrude on the function of other branches of government; and whether national security is at stake." (internal quotations and citation omitted)).

## *IV. Discussion*

In this Court's summary judgment Order, it acknowledged that the Supreme Court has not specifically extended a <u>Bivens</u> remedy to a First Amendment claim, but it allowed Plaintiff's claims to proceed because it was not convinced that the Eleventh Circuit would not recognize such claims. However, the Supreme Court and the Eleventh Circuit, albeit in an unpublished decision, now mandate that courts apply <u>Abbasi</u>'s test to determine whether <u>Bivens</u> should be extended. This Court did not do so in its summary judgment Order because <u>Abbasi</u> had not yet issued. And although courts, pre-<u>Abbasi</u>, similarly analyzed whether to extend <u>Bivens</u> and considered "special factors," <u>see</u> <u>Wilkie v. Robbins</u>, 551 U.S. 537, 550 (2007),[5] <u>Abbasi</u> has clarified

---

5   [T]he decision whether to recognize a <u>Bivens</u> remedy may require two steps. In the first place, there is the question whether any alternative, existing process for protecting the interest amounts to a convincing reason for the Judicial Branch to refrain from providing a new and freestanding remedy in damages. <u>Bush v. Lucas</u>, 462 U.S. 367, 378 (1983). But even in the absence of an alternative, a <u>Bivens</u>

7

the legal landscape in such a way that this Court must revisit its prior Order. Indeed, the Eleventh Circuit recently instructed a district court on remand to apply <u>Abbasi</u>'s test. <u>See</u> <u>Johnson</u>, 2019 WL 2949425, at *3.

Thus, even if <u>Abbasi</u> does not qualify as an "intervening change in controlling law," this Court has discretion, considering the interests of justice and judicial economy, to reconsider its prior Order. Doing so and applying <u>Abbasi</u>'s test precludes Plaintiff from proceeding on his First Amendment retaliation claims. If this Court did not reconsider its Order, the case would proceed to trial on claims that do not exist. Such a result would be unjust. The Court explains its reasons below.

"[T]he Supreme Court has repeatedly confirmed that it has not extended a <u>Bivens</u> remedy to First Amendment claims." <u>Johnson</u>, 2019 WL 2949425, at *3 (citations omitted); <u>see</u> <u>Reichle v. Howards</u>, 566 U.S. 658, 663 n.4 (2012) ("We have never held that <u>Bivens</u> extends to First Amendment claims."); <u>Iqbal</u>, 556 U.S. at 675 (recognizing the Supreme Court has "declined to extend <u>Bivens</u> to a claim sounding in the First Amendment," but assuming without deciding that the respondent's First Amendment claim was actionable under <u>Bivens</u> because the petitioners "d[id] not press this argument"); <u>see also</u> <u>Rager v. Augustine</u>, 760 F. App'x 947, 953 (11th Cir. 2019) (citing <u>Abbasi</u> and recognizing that "it is by no means clear that a damages

---

> remedy is a subject of judgment: "the federal courts must make the kind of remedial determination that is appropriate for a common-law tribunal, paying particular heed, however, to any special factors counselling hesitation before authorizing a new kind of federal litigation." <u>Id.</u>

<u>Wilkie</u>, 551 U.S. at 550 (internal citations modified).

remedy is warranted for a First Amendment retaliation claim"). These cases recognize that Plaintiff's First Amendment retaliation claims are different than the claims previously recognized by the Supreme Court in Bivens, Davis, and Carlson. Thus, Plaintiff's claims arise in a new context, and the Court must consider whether special factors counsel hesitation in extending Bivens in this instance. See Johnson, 2019 WL 2949425, at *3 (finding that the plaintiff's First Amendment retaliation claim represents a new Bivens context and remanding to the district court "to apply a 'special factors' analysis consistent with Abbasi").

One "special factor" to consider is whether Plaintiff had an alternative remedy available to redress the alleged harm. See Abbasi, 137 S. Ct. at 1858 ("For if Congress has created 'any alternative, existing process for protecting the [injured party's] interest' that itself may 'amoun[t] to a convincing reason for the Judicial Branch to refrain from providing a new and freestanding remedy in damages.'" (quoting Wilkie, 551 U.S. at 550)). Examples of alternative judicial forms of relief that may preclude a Bivens remedy include injunctions[6] and habeas petitions. Johnson, 2019 WL 2949425, at *2 (citation omitted).[7] Additionally, courts have recognized that prisoners, like

---

[6] Plaintiff sought monetary damages and declaratory relief in his Complaint; he did not seek injunctive relief. See Order (Doc. 78) at 3. This Court allowed Plaintiff's retaliation claims to proceed for nominal damages. See id. at 28; see also Doc. 121 at 3.

[7] See, e.g., Badley v. Granger, No. 2:17-cv-00041-JMS-DLP, 2018 WL 3022653, at *3 (S.D. Ind. June 18, 2018) ("[The plaintiff] may bring retaliation conduct to the attention of administrators and seek non-monetary remedies. For any injuries he might have sustained, he is able to bring a claim under the Federal Torts Claim Act. Any retaliation that extends his confinement might be actionable in habeas corpus. And any retaliation that results in a violation of a previously recognized Bivens claim is another alternate remedy [the plaintiff] may pursue.").

9

Plaintiff, may pursue non-monetary relief through the Bureau of Prison's grievance procedure. See Ruffin v. Rawls, No. 5:18-cv-591-Oc-39PRL, 2019 WL 3752812, at *5 (M.D. Fla. Aug. 8, 2019), appeal filed (Sept. 5, 2019); Pinkney v. Lockett, No. 5:16-cv-00103- Oc-02PRL, 2019 WL 1254851, at *6 (M.D. Fla. Mar. 19, 2019); Taylor v. Lockett, No. 5:17-cv-00023-Oc-02PRL, 2019 WL 764023, at *10 (M.D. Fla. Feb. 21, 2019); Badley, 2018 WL 3022653, at *3; see also Andrews v. Miner, 301 F. Supp. 3d 1128, 1134 (N.D. Ala. 2017) (recognizing that despite the prisoner's lack of success through the BOP's administrative remedies procedure, "the existence of this alternative remedy also weighs against extension of Bivens to First Amendment claims of use of excessive force in retaliation for filing grievances."). The availability of alternative relief counsels hesitation "in the absence of affirmative action by Congress."

Another factor counseling hesitation is "legislative action suggesting that Congress does not want a damages remedy." Abbasi, 137 S. Ct. at 1865. In 1995, Congress passed the Prison Litigation Reform Act.

> [The PLRA] made comprehensive changes to the way prisoner abuse claims must be brought in federal court. See 42 U.S.C. § 1997e. So it seems clear that Congress had specific occasion to consider the matter of prisoner abuse and to consider the proper way to remedy those wrongs. This Court has said in dicta that the Act's exhaustion provisions would apply to Bivens suits. See Porter v. Nussle, 534 U.S. 516, 524 (2002). **But the Act itself does not provide for a standalone damages remedy against federal jailers.** It could be argued that this suggests Congress chose not to extend the Carlson damages remedy to cases involving other types of prisoner mistreatment.

Abbasi, 137 S. Ct. at 1865 (internal citations modified and emphasis added). Additionally, the PLRA limits a prisoner's available monetary damages in the absence of a physical injury, see 42 U.S.C. § 1997e(e), and here, Plaintiff's retaliation claim is limited to nominal damages on that basis. See Order (Doc. 78) at 4-6. Given Congress's active role in the area of prisoners' rights, this factor causes the Court to "hesitate" and weighs against extending a Bivens remedy in this case.

### V. Conclusion

Since Abbasi, "the majority of courts considering this question have concluded that a Bivens claim is no longer available for a First Amendment retaliation claim." Atkinson v. Broe, No. 15-CV-386-WMC, 2019 WL 231754, at *5 (W.D. Wis. Jan. 16, 2019) (collecting cases); see Luis Buenrostro v. Fajardo, 770 F. App'x 807, 808 (9th Cir. 2019) (finding that "special factors counsel against extending Bivens to [the prisoner's] First Amendment claim; for example, Congress has addressed the question of prisoners' remedies in the [PLRA]" and "an alternative remedial structure exists, including through the [BOP's] administrative grievance process"). Two of my colleagues on this Court have concluded likewise. See Ruffin, 2019 WL 3752812, at *5-6 (Davis, J.); Pinkney, 2019 WL 1254851, at *5-7 (Jung, J.); Taylor, 2019 WL 764023, at *10 (Jung, J.). The undersigned agrees that, on these allegations, application of the Abbasi test precludes Plaintiff's First Amendment retaliation claims. Therefore, it is

**ORDERED:**

1. Defendants' Motion for Reconsideration of the Court's Order Based upon an Intervening Change in Controlling Law (Doc. 104) is **GRANTED to the extent**

**stated herein**. The portion of the Court's Order (Doc. 78) that denied Defendants' motion for summary judgment and permitted Plaintiff's First Amendment retaliation claims against Defendants Vargas, Dole, Scott, Figueroa, Lopes, and Kajander to proceed is **VACATED**. Based on the findings herein, summary judgment is due to be entered on these claims.

2. The Clerk shall enter judgment on Plaintiff's First Amendment retaliation claims in favor of Defendants Vargas, Dole, Scott, Figueroa, Lopes, and Kajander and against Plaintiff and thereafter close the file.

**DONE AND ORDERED** in Jacksonville, Florida, this 27th day of September, 2019.

TIMOTHY J. CORRIGAN
United States District Judge

JAX-3 9/27
c:
Counsel of Record